# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MANUEL WILLIAMS,**

      **Plaintiff,**

  v.                                      Case No. 07-C-1157

**WILLIAM POLLARD,**

      **Defendant.**

## DECISION AND ORDER

This matter is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Both of these motions will be addressed below.

### I. FACTS[1]

Plaintiff, Manuel Williams, commenced this lawsuit asserting a cause of action pursuant to 42 U.S.C. § 1983 seeking a declaratory judgment, compensatory and punitive damages, and injunctive relief. He was incarcerated at the Green Bay Correctional Institution (GBCI) at all times relevant. Based on allegations set forth in the May 21, 2008 amended complaint, plaintiff is proceeding on a First Amendment claim based on allegations that a GBCI policy deprived him of his books, an access to courts claim based

---

[1] Facts are taken from Plaintiff's Proposed Findings of Fact and Defendant's Proposed Findings of Fact. Facts are included to the extent that they are relevant to plaintiff's claims and supported by specific citations to evidentiary materials in the record. See Civil L.R. 56.2 (E.D. Wis.); see also Fed. R. Civ. P. 56(e)(1) (affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated).

on his allegation that the law library was inadequate, and an Eighth Amendment claim regarding problems with food.

Defendant William Pollard has been the Warden of GBCI since 2005. As Warden, Pollard is responsible for the overall administration and operation of GBCI. He has the responsibility at the institution level for implementing all DOC policies and directives, and legislative and judicial mandates.

## A. First Amendment Claim: Non-Delivery Of Religious Book And Law Book

Plaintiff was housed at GBCI from March 20, 2006 until February 14, 2008. When he arrived at GBCI, plaintiff was placed in disciplinary segregation. On March 27, 2006, a package was received at GBCI from Americana Buddhist Temple but it was sent back because plaintiff was in segregation.

In offender complaint GBCI-2006-9782, filed April 4, 2006, plaintiff complained about a religious text and a legal text being returned to the sender. On June 7, 2006, the Inmate Complaint Examiner (ICE) filed an ICE Report recommending dismissal of the offender complaint and the complaint was dismissed. (Williams Ex. D at 3.) Plaintiff filed an appeal to the Corrections Complaint Examiner (CCE) and on July 12, 2006, the CCE Report was filed in which the CCE recommended returning the offender complaint to GBCI for a prioritized investigation:

> Complainant submitted documentation with his appeal that shows items of property were indeed received on 3/27/06 and 3/31/06, respectively, which were immediately returned to the sender prior to notification to the complainant. In addition, the forms and procedure used in doing so are "questionable." For that reason, and because the ICE's report is in contrast to the known facts, it is recommended this complaint be affirmed on appeal to the extent it be returned to the GBCI for further investigation and an amended recommendation/decision. The institution should treat it as a priority complaint and advise complainant of their decision within a

2

reasonable amount of time. Through this recommendation complainant is advised that should he remain dissatisfied once the reviewing authority decision is made, it will be necessary to submit another appeal outlining the reason(s) for same to effect another CCE review.

(Williams Ex. D at 9.) On August 31, 2006, an Amended ICE Report recommending dismissal of plaintiff's offender complaint was filed stating in relevant part:

> Inmate Williams complains that items from the Southern Poverty Law Center and Americana Buddhist Temple were returned to sender because inmates in Disciplinary Separation or Program Segregation are not allowed items from retail outlets.
>
> Inmate Williams was and is presently housed in the New Segregation Unit at GBCI. On the dates that the items listed above arrived, Inmate Williams' status was Disciplinary Separation Level 1. Per GBCI Property/Clothing Handbook "Unauthorized items ordered by the inmate must be returned to the retail outlet from which they were received, at the inmate's expense." Though you may have ordered the items prior to your segregation placement, if you are in segregation when the items arrived they are considered unauthorized items since you are not allowed to order from retail outlets while in segregation. Though it is unfortunate the items must be returned to the sender, you are reminded that your placement in segregation is the direct result of your own actions/choices.

(Williams Ex. E at 1.) Defendant Pollard dismissed the offender complaint, plaintiff filed an amended appeal to the CCE, and the September 26, 2006 Amended CCE Report recommended dismissal, finding the amended recommendation/decision "to be reasonable, accurate and responsive to the secretary's previous decision." (Williams Ex. E at 6.)

Inmates in segregation are provided limited property in accordance with Wisconsin Administrative Code §§ DOC 303.69 and 303.70. Pursuant to the GBCI Segregation Handbook, inmates in segregation are allowed one soft covered religious text and, depending of the inmate's segregation status, zero to four library style books per week. Inmates are not permitted to purchase or receive items from retail outlets while in

3

segregation. No personal books are permitted in segregation, with the exception of one soft-covered religious text.

GBCI allows a considerable amount of property and freedom for those inmates in the general population, including items received from retail outlets. However, GBCI restricts the property and freedoms allowed in program segregation in order to create an incentive for the inmates in general population to maintain acceptable behavior, and in order to create an incentive for the inmates in program segregation to improve their behavior so that they can join or rejoin the general population. Limited property in segregation, such as the prohibition of receiving items from retail outlets, allows for staff to effectively conduct cell searches and control contraband. It is the policy of the DOC to maintain safe, secure institutions that are free of contraband. Contraband in segregation housing units can present a threat to the safety of staff and inmates by the misuse of personal property items. Historically, publications, such as books, have been altered to conceal contraband which have been sent through the mail to inmates. The increased number of personal property substantially reduces the staff's ability to effectively search living areas and allows for introduction of contraband property to occur. There are health and safety concerns associated with contraband because inmates trade items, misuse items, and steal items. Items of value can also create jealousy among inmates creating climate and control issues for staff which can lead to inmates acting out against other inmates with threats and acts of violence.

**B. Access to the Courts Claim**

On July 24, 2006, plaintiff filed offender complaint GBCI-2006-21327, complaining of an inadequate law library and that he was only allowed one hour per week in the library.

4

In March 2006, the GBCI segregation law library had numerous legal texts that were available for inmates to use, including the Wisconsin Court Rules and Procedures Federal 2002, United States Code on Federal Rules of Appellate Procedure, and Federal Practice Digests. The GBCI segregation law library also had the current version of the Wisconsin Administrative Code § DOC 303.

On April 4, 2008, plaintiff lost his civil appeal in the United States Court of Appeals for the Seventh Circuit when the court denied his petition for rehearing. The appeal was dismissed on February 25, 2008 for failure to file a transcript. Upon dismissing the appeal, the court stated in relevant part:

> On appeal, Williams argues that there is insufficient evidence to support the jury's verdict. He also argues that it was error to grant judgment as a matter of law for the one officer because fact questions remained about his involvement in the incident.
>
> Without the trial transcript, we are unable to review either of these arguments. *See LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir. 1995). "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R.App. P. 10(b)(2); *see Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n. 10 (7th Cir. 2003). Both of Williams's arguments require us to evaluate the evidence presented at trial, so dismissal of this appeal is appropriate. *See Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 581 (7th Cir. 2001); *LaFollette*, 63 F.3d at 544; *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir. 1991). Williams's pro se status does not persuade us to conclude otherwise. *See Woods v. Thieret*, 5 F.3d 244, 245-46 (7th Cir. 1993) (dismissing appeal of pro so plaintiff for failure to provide transcript).
>
> We could order Williams to supplement the record, *see* Fed. R. App. P. (10)(e), but we decline to do so here. The appellee's response brief, which urges dismissal, notified Williams of the potential consequences of his failure to provide a transcript. *See Learning Curve Toys*, 342 F.3d at 731 n.10. Williams says in reply that before briefing began he tried to obtain a trial transcript from the district court. That is not true; Williams requested a

5

> copy of the pleadings and the few trial exhibits that had already been transmitted to our court. More importantly, however, Williams made no attempt to secure a transcript after receiving the appellees's response brief. *See generally LaFollette*, 63 F.3d at 545. He tells us that he could not afford a transcript, but there are steps he could have taken to try to get the associated fees waived. *See* 28 U.S.C. § 753(f).

Williams v. Schueler, 266 Fed. Appx. 490 (7th Cir. Feb. 25, 2008).

**C. Eighth Amendment Claim: Problems With Food**

On June 2, 2006, plaintiff was placed on indefinite modified diet orders due to allergies to chocolate, grapefruit, onions, tomatoes, and lemons. Plaintiff's alleged food problems included being served with foods he was allergic to, food containing foreign objects such as hair and bugs, and otherwise inadequate or undesirable food. On July 13, 2007, plaintiff reported to Richard Heidorn, M.D., that his food allergies were not being addressed adequately, but he did not report having any allergic reactions. The subsequent plan was to check and be sure that plaintiff's food allergies were being addressed by food service. On July 16, 2007, plaintiff complained to an officer that he was having an allergic reaction to the onions that were in his potatoes from his supper tray. Plaintiff claimed to be having breathing problems, but the officer reported that he was yelling due to being angry and did not appear to be in any distress. The officer contacted food service and was informed that there were no onions in plaintiff's potatoes, only celery. Plaintiff was advised to use his inhaler and let the staff know of any further problems. Plaintiff's July 16, 2007 offender complaint is the only documented instance in his medical records where he claimed to have an allergic reaction.

**1. Exhaustion**

6

Plaintiff filed numerous offender complaints alleging problems with the food served to him at GBCI. According to defendants, the following offender complaints were not fully exhausted: (1) GBCI-2006-16101 - alleging that on June 4, 2006, the food plaintiff was allergic to was not properly substituted - not exhausted because rejected as moot and because plaintiff did not appeal to the CCE; (2) GBCI-2006-27830 - alleging that on September 12, 2006, plaintiff found a brown piece of hair in his food - not exhausted because rejected due to plaintiff raising multiple issues and because plaintiff did not appeal to the CCE; (3) GBCI-2006-31753 - alleging inadequate nutrients/calories - not exhausted because rejected as it contained multiple issues and because no appeal to the CCE; (4) GBCI-2007-2703 - alleging that on December 26, 2006 there were onions in plaintiff's cheeseburger - not exhausted because rejected as untimely and because no appeal to the CCE; (5) GBCI-2007-5256 - alleging that on February 5, 2007, plaintiff found a bug in his food - not exhausted because rejected as moot and because no appeal to the CCE; (6) GBCI-2007-11567 - alleging that on March 30, April 1, and April 7, 2007, plaintiff received rotten beans and defrosted noodles - not exhausted because rejected as untimely and because no appeal to the CCE; (7) GBCI-2007-16886 - alleging that on June 2, 2007, plaintiff was missing eggs from his food tray - not exhausted because rejected as he had already filed two complaints for the week and it was not a health or personal safety issue and because plaintiff did not appeal to the CCE; (8) GBCI-2007-18953 - alleging that on June 3, 2007, there was hair in plaintiff's meal - not exhausted because rejected as untimely and because no appeal to the CCE; (9) GBCI-2007-18951 - alleging that on June 11, 2007, there was a bug in plaintiff's food - not exhausted because rejected as not alleging sufficient facts upon which redress may be made and because no appeal to the

7

CCE; (10) GBCI-2007-20617 - alleging that on July 12, 2007, there were onions in plaintiff's meal - not exhausted because appeal to the CCE was untimely; (11) GBCI-2007-32514 - alleged that on October 16, 2007, there was grapefruit in plaintiff's meal - not exhausted because appeal to the CCE was untimely; (12) GBCI-2008-761 - alleging that on December 23, 2007, there was a hair in plaintiff's food - not exhausted because appeal to the CCE was untimely; and (13) GBCI-2008-762 - alleging that on December 24, 2007, there was hair in plaintiff meal - not exhausted because rejected due to insufficient facts and because no appeal to the CCE.

**2. Personal Involvement of Defendant Pollard**

Although Pollard has general supervisory authority over GBCI operations, he does not supervise the day-to-day operations of food services staff. Plaintiff wrote to Pollard on August 30, 2006 and December 25, 2006 with complaints related to food. Both of these letters were responded to by Deputy Warden Michael Baenen, who passed plaintiff's concerns on to the appropriate staff to handle them.

Other than Pollard's receipt of the two letters, Pollard's only involvement in plaintiff's food complaints were recommendations for the following exhausted offender complaints:

(1) GBCI-2006-13758 - alleging that certain foods, including a chocolate peanut butter bar, were served to him on May 11 and 12, 2006; Pollard accepted the ICE's recommendation of dismissal of this complaint;

(2) GBCI-2006-23771 - alleging that he found onions in his potatoes on three days in early August of 2006; Pollard accepted the ICE's recommendation of dismissal of this complaint;

8

(3) GBCI-2006-24575 - alleging that he found tomatoes and onions in his meal on August 19, 2006; Pollard accepted the ICE's recommendation of the affirmation of this complaint;

(4) GBCI-2006-24880 - alleging that plaintiff found onions in his meal on August 23, 2006; Pollard accepted the ICE's recommendation of the affirmation of this complaint;

(5) GBCI-2006-28994 - alleging that he did not receive adequate nutrients and calories on September 24, 2006; Pollard accepted the ICE's recommendation of dismissal of this complaint;

(6) GBCI-2007-10730 - alleged that he was served meat that was undercooked on April 5, 2007; Pollard accepted the ICE's recommendation of dismissal with modification of this complaint;

(7) GBCI-2007-15842 - alleging that he was served an orange bar with a metal shaving on May 28, 2007; Pollard accepted the ICE's recommendation of the affirmation of this complaint;

(8) GBCI-2007-37994 - alleging that he was served grapefruit and tomato soup on December 21, 2007; Pollard accepted the ICE's recommendation of dismissal of this complaint; and

(9) GBCI-2008-1640 - alleging that he was served cold food on January 11, 2008; Pollard accepted the ICE's recommendation of dismissal of this complaint.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that

10

a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. See M. Snower & Co. v. United States, 140 F.2d 367 (7th Cir. 1944). The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. See 10A Charles Alan Wright et al. § 2720 at 335.

### III. DISCUSSION

**A. First Amendment Claim**

Plaintiff contends that he is entitled to summary judgment on his First Amendment claim based on his Exhibits A-H. These exhibits include two forms indicating that plaintiff's packages from Americana Buddhist Temple and the Southern Poverty Law Center were received at GBCI on March 27, 2006 and March 31, 2006, respectively, but were returned to the sender because "Inmates in Program Segregation or Disciplinary Separation Status are not allowed to order or receive property/clothing from retail outlets." (Williams Exs. A, B.) Plaintiff's exhibits also include GBCI Segregation Unit rules and Inmate Complaint Review System documents. (Williams Exs. C-H.)

11

Defendant contends that plaintiff's First Amendment claim relating to non-delivery of a religious book and a law book fails as a matter of law because the policy prohibiting inmates in segregation from receiving packages from retail outlets did not violate plaintiff's First Amendment rights because the policy is reasonably related to legitimate penological interests.

In reply, plaintiff contends that Pollard did not have a legitimate penological justification to deny him his religious and legal books while in segregation. He asserts that Pollard's decision to agree with the Inmate Complaint Examiner's recommendation is based upon punishment, not safety, and that the property policy punishes inmates who are in segregation for non-violent offenses or just investigations. Plaintiff asserts that he was denied his law and religious books not for security, safety, misbehavior, problematic actions, or contraband reasons but because he was in segregation status.

Although imprisonment does not automatically deprive a prisoner of important constitutional protections, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. Beard v. Banks, 548 U.S. 521, 528 (2006). In reviewing a prison's policies restricting prisoners' access to written materials, courts owe "substantial deference to the professional judgment of prison administrators." Id. (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). A prison policy restricting access to publications is permissible when it is "reasonably related to legitimate penological interests," and is not an "exaggerated response" to such objectives. Beard, 548 U.S. at 528 (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). In determining whether a prison policy withstands the Turner test, courts consider four factors:

12

> First, is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"? Second, are there "alternative means of exercising the right that remain open to prison inmates"? Third, what "impact" will "accommodation of the asserted constitutional right ... have on guards and other inmates, and on the allocation of prison resources generally"? And, fourth, are "ready alternatives" for furthering the governmental interest available?

Beard, 548 U.S. at 529 (internal citations omitted).

The justification for GBCI's policy that inmates in segregation cannot receive items from retail outlets is to create an incentive for inmates in general population to maintain acceptable behavior and also to create an incentive for inmates in segregation to improve their behavior so that they can join the general population. The policy is also justified by safety and security concerns in segregation, specifically with regard to the concealment of contraband, the presence of which can lead to a host of safety and security concerns. The motivation of better behavior is a valid rationale, see Beard, 548 U.S. at 530-31, as is institution security, Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991).

With regard to the second Turner factor, it is undisputed that inmates in segregation at GBCI are allowed one soft-covered religious text and zero to four library style books per week. Reading materials are not banned in segregation, only reading materials (and other property) from retail outlets. Plaintiff could have obtained reading materials from other sources.

Third, accommodation of the asserted right would increase security risks with regard to materials entering the segregation unit and staff resources. Additionally, based on the nature of policy, accommodation of the asserted right could result in a negative impact. See Beard, 548 U.S. at 532 ("If the Policy (in the authorities' view) helps to produce better behavior, then its absence (in the authorities' view) will help to produce worse behavior,

13

e.g., "backsliding"). Finally, turning to the fourth factor, there is no indication of a "ready alternative" for furthering the governmental interest.

The GBCI policy to not allow retail items in segregation satisfies the Turner factors and therefore defendants' motion for summary judgment as to this claim will be granted.

**B. Access to the Courts Claim**

Plaintiff contends that an inadequate law library and the denial of his law books from his property caused him to lose his appeal. Defendant contends that plaintiff's access to the courts claim fails as a matter of law.

It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Alston v. DeBruyn, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Lewis, 518 U.S. at 353 n.4.

Plaintiff has failed to raise a genuine issue of material fact that the law library was inadequate, and in any case it is undisputed that plaintiff lost his appeal because he failed to file a trial transcript. Further, the court of appeals found that plaintiff was on notice of

the need to file a transcript, Williams, 266 Fed. Appx. at 491-92, and thus the failure to file a transcript was not caused by a lack of legal research materials. Accordingly, plaintiff's access to the courts claim will be dismissed.

## C. Eighth Amendment Claim

### 1. Exhaustion

Defendant contends that thirteen of plaintiff's food-related offender complaints were not properly exhausted and cannot be considered in the analysis of whether there was an Eighth Amendment violation. Plaintiff contends that he did exhaust three of the thirteen. Specifically, plaintiff asserts that in GBCI-2007-32514, he provided a sufficient reason as to why his untimely appeal to the CCE should have been accepted; with regard to GBCI-2007-20617, he did not have any legal loan envelopes because he had to use his indigent envelope to contact the court on an emergency issue; and in GBCI-2008-761, the offender complaint was not untimely, and the prison investigated the merits of the inmate complaint.

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The

15

PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 87-88, 93 (2006); see also Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (citing Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written

request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

Plaintiff does not dispute that he failed to exhaust GBCI-2006-16101, GBCI-2006-27830, GBCI-2006-31753, GBCI-2007-2703, GBCI-2007-5256, GBCI-2007-11567, GBCI-2007-16886, GBIC-2007-18953, GBIC-2007-18951, and GBIC-2008-762. Thus, he may not proceed on a claim based on the allegations set forth in those offender complaints.

Turning to the three offender complaints plaintiff asserts that he did exhaust, it is undisputed that in all three of them, the appeals to the CCE were not filed within ten calendar days of the complaint decisions, in compliance with Wis. Admin. Code § DOC 310.13(1). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). However, an administrative remedy that an inmate is prevented from utilizing is not an "available" remedy. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004). Plaintiff asserts that he was unable to timely file an appeal to the CCE in GBCI-2007-20617 because he did not have an envelope. Due to the fact that inmates are required to make a "written request" to the CCE and send it in a sealed envelope to a post office box in Madison, Wisconsin, lack of access to an envelope would mean that plaintiff was unable to appeal. Under these circumstances, I find that administrative remedies were unavailable and therefore plaintiff has completed exhaustion with respect to GBCI-2007-20617. However, a similar finding cannot be made concerning the other two offender

17

complaints. Despite plaintiff's assertion to the contrary, a review of the record reveals that the appeals to the CCE were dismissed as untimely and there is no indication that administrative remedies were unavailable. Thus, GBCI-2007-32514 and GBCI-2007-761 were not properly exhausted and plaintiff may not proceed based on the allegations contained therein.

### 2. Defendant Pollard

Defendant Pollard contends that he cannot be liable due to lack of personal involvement. He further contends that plaintiff's Eighth Amendment claim relating to alleged problems with his food fails as a matter of law because the alleged problems with his food were not sufficiently serious and that he was not deliberately indifferent.

Plaintiff contends that Pollard failed to stop his food from being tampered with in that he exercised independent judgment on plaintiff's food issues, but that because Pollard did not take appropriate action, his food issues worsened. Plaintiff further asserts that Pollard turned a blind eye to his condition by failing to facilitate, approve, or investigate the ongoing food tampering, or institute a policy that would hinder the food issues.

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since a section 1983 action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) (quoting Gentry v. Duckworth,

18

Case 2:07-cv-01157-LA   Filed 09/21/09   Page 18 of 20   Document 60

65 F.3d 555, 561 (7th Cir. 1995)). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Johnson, 444 F.3d at 583-84 (quotation omitted).

There is no respondeat superior liability under § 1983; a plaintiff must demonstrate that supervisory officials are personally responsible for alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009); Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996). Supervisory officials may be personally responsible for the constitutional torts of their subordinates only if the official knows of and facilitates, approves, condones, or turns a blind eye to the conduct. See Chavez v. Cady, 207 F.3d 901, 906 (7th Cir. 2000); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." Burks, 555 F.3d at 594.

It is undisputed that as GBCI Warden, defendant Pollard did not supervise the day-to-day operations of food services staff. Plaintiff wrote to Pollard twice with complaints related to food and Pollard reviewed the recommendation of the ICE related to fourteen of plaintiff's exhausted offender complaints. Such activities do not support § 1983 personal involvement. See George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (ruling against a prisoner on an administrative complaint does not cause or contribute to the underlying violation).

Plaintiff asserts that Warden Pollard should have enacted a policy in relation to food service or that in some other manner he should have acted to prevent plaintiff's issues with food service. It is unclear how a policy would have helped the situation. Each incident

19

appears to have been a simple error and, looking at the number of meals served over a period of time, together with challenges inherent in serving many inmates in a prison setting and obliging special requests due to allergies, etc., the errors were not overly excessive. Moreover, a review of the offender complaints in question reveals that plaintiff's complaints were taken seriously. As such, defendant Pollard may not be held personally liable for plaintiff's food issues. See Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998) ("The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability.") (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #35) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #41) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file excess pages (Docket #43) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** and that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21 day of September, 2009.

/s_____
LYNN ADELMAN
District Judge